UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SOCIETE DAMENAGEMENT ET DE
GESTION DE LABRI NAUTIQUE,

        Plaintiff,

  v.                                         Case No. 16-C-785

MARINE TRAVELIFT INC.,

        Defendant.

---

### DECISION AND ORDER GRANTING SUMMARY JUDGMENT

---

This is an action by a French corporation to recognize a judgment entered by a French court against a Wisconsin corporation. The underlying dispute arises out a the 2004 sale of a boat hoist by Defendant Marine Travel Lift (MTI) to Plaintiff Societe dAmenagement et de Gestion de lAbri Nautique (Sagan) at its facility in Saint-Marie-La-Mere, France. Sagan filed suit in a French court and ultimately obtained a judgment against MTI. While MTI seeks to re-litigate the dispute in this court, Sagan has filed a motion for summary judgment seeking recognition of the judgment it has already obtained. This court has jurisdiction under 28 U.S.C. § 1332(a)(2). For the reasons that follow, Sagan's motion will be granted.

### BACKGROUND

Sagan is a French corporation with its principal place of business located in Saint-Marie-La-Mere, France. Plaintiff's Proposed Findings of Fact (PPFOF), ECF No. 23, at ¶ 1. MTI is a Wisconsin corporation with its principal place of business located in Sturgeon Bay, Wisconsin. *Id*. at ¶ 2. In December 2003, Sagan ordered an MTI-manufactured boat hoist and related equipment

through a third-party supplier, CEI. *Id*. at ¶ 3. The boat hoist was installed and inspected at a marina in Saint-Marie-La-Mere, France on April 22, 2004. *Id*. at ¶ 4; Defendant's Proposed Findings of Fact (DPFOF), ECF No. 29, at ¶ 2. Sometime after the boat hoist was installed and before April 2005, Sagan began to complain about corrosion to CEI. PPFOF at ¶ 5. CEI ultimately contacted MTI about the concerns. *Id*. at ¶ 6. By mid-2006, CEI entered into bankruptcy receivership. *Id*. at ¶ 8.

Sagan petitioned the Perpignan Commercial Court in France to appoint an independent expert to inspect the boat hoist and determine the cause of the defect. *Id*. On November 17, 2006, MTI was notified of the court-ordered expert evaluation of the boat hoist. *Id*. at ¶ 9. On December 4, 2006, a second inspection of the equipment took place at MTI's request. *Id*. at ¶ 10. On March 7, 2007, the court-ordered expert filed his report. Court of Appeals of Versailles Op. (English translation), ECF No. 24-4 at 2. The expert's report prompted Sagan to initiate a product-liability suit against CEI and MTI in the Commercial Court of Perpignan, alleging claims under Articles 1641[1] and 1647[2] of the French Civil Code. PPFOF at ¶ 13. The Commercial Court of Perpignan was later deemed an incompetent court, and the case was transferred to the Commercial Court of Chartres. *Id*. MTI appeared and was represented by French counsel. Commercial Court of Chartres Op. (English translation), ECF No. 24-3 at 3.

---

[1] Article 1641 states: "A seller is bound to a warranty on account of the latent defects of the thing sold which render it unfit for the use for which it was intended, or which so impair that use that the buyer would not have acquired it, or would only have given a lesser price for it, had he known of them." PPFOF at ¶ 13.

[2] Article 1647 states: "Where the thing which had defects perishes because of its bad quality, the loss falls upon the seller who is liable to the buyer for restitution of the price and other compensations explained in the two preceding Articles." *Id*.

2

On September 20, 2011, the Commercial Court of Chartres rendered its judgment. *Id*. at 3. The Chartres Court found Sagan's claim to be admissible but without merit and dismissed the case. *Id*. Sagan appealed the decision to the Versailles Court of Appeals. Versailles Opinion, ECF No. 24-4 at 4. MTI, again represented by counsel, participated in the Versailles Court of Appeals proceedings. PPFOF at ¶ 22. The Versailles Court of Appeals deliberated the case in a public hearing on January 29, 2013, without objection from either party. *Id*. at ¶ 23. On March 28, 2013, the Versailles Court issued its decision, reversing the Chartres Court and finding MTI liable for defects in the boat hoist. *Id*. at ¶ 24. The Versailles Court declared MTI was liable to Sagan for 58,665 €, not including tax, plus interest at the legal rate beginning on April 9, 2004, plus 4,000 € for non-legal costs, and the costs of Sagan's attorneys' fees throughout the proceedings, as set by the Court's discretion. ECF No. 24-4 at 10–11. MTI did not appeal the Versailles Judgment to the French Supreme Court. PPFOF at ¶ 29. To this date, MTI has not paid any of the damages determined by the Versailles Court. *Id*. at ¶ 30. On June 22, 2016, Sagan filed this complaint seeking recognition of the Versailles Judgment. ECF No. 1. Sagan amended its complaint on September 12, 2016. ECF No. 2. On November 14, 2017, Sagan filed a motion for summary judgment to recognize the Versailles Judgment. ECF No. 21. The matter is fully briefed and ripe for decision.

**LEGAL STANDARDS**

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary

3

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

"At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). However, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record is taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## ANALYSIS

**A. The French Judgment Is Final**

There is no dispute that this matter was fully litigated in France, and Sagan obtained a final judgment in its favor against MTI from the Court of Appeal of Versailles. Although MTI suggests that a factual dispute exists as to "whether the French decision constitutes a judgment that can be enforced in this Court," MTI Br. in Opp'n, ECF No. 28 at 15, MTI does not dispute that the Versailles Court of Appeals issued a decision finding MTI liable and awarding Sagan damages, attorneys' fees and costs. MTI Resp. to PPFOF, ECF No. 29, ¶¶ 24–28. Nor does MTI dispute that

it did not appeal the decision of the Court of Appeals to the French Supreme Court. It thus follows that the judgment of the Versailles Court of Appeals is a final judgment.

MTI also suggests that it would be irregular for an appellate decision to be considered a judgment within the United States. While it may be unusual for an appellate court in the United States to issue a judgment, the decision in question was not issued by a United States appellate court; instead, it was issued by an appellate court in France. MTI offers no evidence or argument that it is irregular for appellate courts in France to issue judgments. The appellate courts in France routinely reexamine the entire case and partake in fact-finding. Freshfields Bruckhaus Deringer, *France,* ENCYCLOPEDIA OF INTERNATIONAL COMMERCIAL LITIGATION § A1.43 (2015). It is not irregular for a court that engages in fact-finding to issue a judgment. Mere differences in legal systems are not sufficient, standing alone, to support a refusal to recognize a final judgment.

Under French law, a judgment by the trial court, like the Chartres Court, becomes definitive and enforceable if no appeal is lodged; if an appeal is lodged, the judgment is stayed pending the appellate court decision. Deringer, *supra* § A11.2. In the case of an appellate court decision, an appeal to the supreme court does not stay the judgment: "As soon as an arrêt[3] of a cour d'appel [court of appeals] is rendered and notified, it must be executed by the losing party." *Id*. § A11.3. Additionally, the language of the Versailles Judgment indicates that it is not only a decision explaining the Versailles Court's rationale, but it is also "a decision that is final and non-appealable" and orders damages that MTI must pay Sagan. Court of Appeals of Versailles Op. (English

---

[3] An arrêt is defined as "a judgment, decision, or decree of a court or sovereign." Additionally, Merriam-Webster explains the origin and etymology of the word: "French arrêt[:] decision of a court." *Arret*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/arret (last visited May 29, 2018).

translation), ECF No. 24-4 at 10–11. MTI did not appeal this decision, and even if it had, MTI was required to execute the judgment upon its issuance. I therefore conclude that the Versailles Judgment is a final and enforceable judgment under French law, and turn to the central question of whether it is entitled to recognition under Wisconsin law.

**B. Recognition of Foreign Judgment**

Federal and state court judgments within the United States are enforced state-to-state pursuant to the full faith and credit clause of the United States Constitution, art. 4, § 1, and 28 U.S.C. § 1738 (1988). Foreign country judgments, such as the Versailles Judgment, however, are not vested with the protections of the full faith and credit clause or 28 U.S.C. § 1738. No federal law in the absence of a treaty or federal statute governs the recognition or execution of foreign country judgments in the United States. Thus, the recognition of such judgments is governed by applicable state law, here Wisconsin's, even when that recognition is sought in federal court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). When state law is unclear, the court must make an *Erie* estimate to determine how Wisconsin state law would resolve this dispute, as determined by the state legislature and the highest state court. *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir. 1977) (citing *Erie R.R. Co.*, 304 U.S. at 64; *Bernhardt v. Polygraphic Co. of Am., Inc.*, 350 U.S. 198, 209 (1956) (Frankfurter, J. concurring)) (explaining that *Erie*'s principles require federal courts to make estimates of what a state court would rule to be its law).

*Hilton v. Guyot* is the United States Supreme Court's seminal case on the recognition of foreign judgments. 159 U.S. 113 (1895). In *Hilton*, which also involved recognition of a judgment of a French court, the Court explained that the most certain guide to recognition is a treaty between both sovereignties. When no such treaty exists, however, as is the situation between France and the

6

United States, the courts turn to "the comity of nations," which the Court described as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Id*. at 163–64. After a lengthy discussion of the leading legal authorities on the subject at the time, the Court set forth the following considerations that would justify giving full effect to the judgment of a foreign court:

> [W]e are satisfied that, where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect . . . .

*Id*. at 202–03.

Ultimately, the Court held in *Hilton* that the French judgment was not enforceable in the United States because France would not have given the same recognition to the judgment of a court of the United States. *Id.* at 227–28. In more recent times, however, the requirement of reciprocity has fallen into disfavor. *Wilson v. Marchington*, 127 F.3d 805, 811–12 (9th Cir. 1997); *see also* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE U.S. § 481, reporter's note 1 (Am. Law Inst. 1987). It also appears that French law on the issue may have changed since 1895 and that the country now recognizes foreign country judgments. *Alfadda v. Fenn*, 966 F.Supp. 1317, 1326 (S.D.N.Y. 1997).

7

Many states have adopted a version of the Uniform Foreign-Country Money Judgments Recognition Act, which codifies various factors that courts should consider when determining whether a foreign judgment should be recognized in the United States. *See Tonga Air Servs., Ltd. v. Fowler*, 826 P.2d 204, 208 (Wash. 1992) (identifying states that have adapted a version of the Act as of 1992). Wisconsin has not enacted such legislation, however. In 2011, the most recent attempt failed to pass the Wisconsin Senate. A.B. 391, 100th Leg., 2011–12 Sess. (Wis. 2011). But even in states that have not adopted the Uniform Act, most courts have applied the same principles, which are also set forth in the Restatement. RESTATEMENT (THIRD), *supra*, part IV, ch. 8, introductory note. Although the Wisconsin Supreme Court does not regard the Restatement as authoritative in itself, it frequently cites to it as a statement of law in areas where its own precedent does not control. *Breener v. Amerisure Mut. Ins. Co.*, 2017 WI 38, ¶ 43, 374 Wis. 2d 578, 893 N.W.2d 193. For this reason, and because both parties agree that Wisconsin courts would turn to the Restatement for guidance, MTI Br. in Opp'n at 18, I turn to it as well.

Section 482 of the Restatement states:

(1) A court in the United States may not recognize a judgment of the court of a foreign state if:

>  (a) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law; or

>  (b) the court that rendered the judgment did not have jurisdiction over the defendant in accordance with the law of the rendering state . . . .

RESTATEMENT (THIRD), *supra*, § 482. MTI argues the Versailles Judgment should not be recognized because the legal system is not comparable, as there is no jury, no similar discovery process and no live testimony. These differences, however, do not mean that France's legal system does not provide

8

impartial tribunals or is incompatible with due process of law. *Hilton*, 159 U.S. at 205 ("[W]e are not prepared to hold that the fact that the procedure in these respects differed from that of our own courts is, of itself, a sufficient ground for impeaching the foreign judgment."). Furthermore, MTI does not challenge the Chartes Court's or the Versailles Court's jurisdiction over it.[4] Rather, the records from both courts indicate that MTI appeared and was represented by counsel in both proceedings. As a result, neither condition requiring non-recognition under the Restatement applies.

Even if denial of recognition is not mandatory, the Restatement provides that a court nevertheless need not recognize a foreign judgment under certain circumstances:

> (2) A court in the United States need not recognize a judgment of the court of a foreign state if:
>
>> (a) the court that rendered the judgment did not have jurisdiction of the subject matter of the action;
>>
>> (b) the defendant did not receive notice of the proceedings in sufficient time for him to defend;
>>
>> (c) the judgment was obtained by fraud;
>>
>> (d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or the State where recognition is sought;
>>
>> (e) the judgment conflicts with another final judgment that is entitled to recognition; or
>>
>> (f) the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

---

[4] MTI does remark that the Court of Perpignan was without jurisdiction to appoint the expert. However, MTI does not argue that the Court of Perpignan's lack of jurisdiction invalidated the jurisdiction of the Courts of Chartes or Versailles. Additionally, MTI admits that it did not challenge the Perpignan Court's or the Chartres Court's personal or subject matter jurisdiction. ECF No. 36, at ¶¶ 17, 19.

9

RESTATEMENT (THIRD), *supra*,§ 482.

MTI contends that the Versailles Judgment need not be recognized under subsection (d) because it violates the public policy of Wisconsin. Its argument in support of this contention, however, is essentially over the merits of the decision rendered and not the policies underlying the law it applied. MTI argues that the decision of the Versailles Court of Appeals is contrary to Wisconsin's public policy because it requires MTI to pay Sagan an amount nearly equal to the price it paid MTI for the hoist when Sagan purchased it from CEI in 2004, even though Sagan is still using the hoist. MTI Br. in Opp'n at 15. In other words, MTI contends that the French court erred in its determination that the hoist was defective and in calculating the damages Sagan sustained. But whether the French court erred is not the issue before this court; the issue is whether the French court's judgment, erroneous or not, is entitled to recognition under Wisconsin law.

MTI argues that the Versailles Judgment should not be recognized because it contravenes Wisconsin public policy, but it fails to state what public policy the judgment contravenes. MTI does not allege that France's policy of awarding the purchaser of equipment, which is shown to have had a latent defect, damages in the amount of money needed to repair the defect is against the public policy of Wisconsin. Nor does MTI argue it was prevented from offering evidence in its own defense against Sagan's allegations that its equipment was defective or in support of its limited warranty defense. Its argument is that the French court should have ruled in its favor. That is not a public policy argument. It is instead an effort to relitigate its dispute with Sagan in this court. This is precisely what the recognition of foreign judgments is intended to prevent.

MTI also cites *In re Steffke*, 65 Wis. 2d 199, 222 N.W.2d 628 (1974), to support its argument that the Versailles Judgment is against Wisconsin public policy. In *Steffke*, the issue was

whether a Mexican divorce decree issued to a Wisconsin married couple was valid so as to render the wife's subsequent marriage invalid. *Id*. at 203. Without discussing any of the other factors generally considered by courts in determining whether a foreign judgment should be recognized, the Wisconsin Supreme Court simply noted that the Mexican divorce decree was contrary to two Wisconsin statutes, including a statute that declared that a Wisconsin resident may not go into another state, territory or country for the purposes of obtaining a divorce he or she would be unable to obtain in Wisconsin. *Id*. at 204. The court then noted the facts clearly indicated the parties went to Mexico to circumvent Wisconsin law and obtain a divorce, which contradicted explicit Wisconsin law and public policy. *Id*. at 205. Under these circumstances, the court held that the Mexican decree would not be recognized. *Id*. at 207.

*Steffke* has no applicability here. Wisconsin does not have any statutes prohibiting its residents from selling products in other countries. MTI did not violate Wisconsin law in selling a boat hoist to Sagan, nor did Sagan violate any Wisconsin law in purchasing it. Of course, Wisconsin has a strong interest in seeing that its citizens are treated fairly, but again, MTI does not argue that the claims asserted against it were based upon laws that were contrary to the public policy of Wisconsin. The public policy exception is directed to "claims perceived to be contrary to fundamental notions of decency and justice." RESTATEMENT (THIRD), *supra*, § 482, cmt. f. According to the Restatement, "few judgments fall in the category of judgments that need not be recognized because they violate the public policy of the forum." *Id*. § 482, reporter's note 1. Sagan's claims against MTI do not fit the public policy exception for recognizing foreign judgments.

MTI also argues that even if the judgment against it is not entirely against Wisconsin's public policy, the award of attorneys' fees and interest is. While the French court's practice of awarding

11

attorneys' fees may be different than the rule in Wisconsin and the United States in general, it is not an unreasonable rule to adopt and clearly does not violate fundamental rules of decency and justice. Likewise, the awarding of interest from the date of loss, as opposed to the date the damages are liquidated, is different than the rule in this state. But that does not make it against Wisconsin public policy. These differences with French law are not grounds for refusing recognition of a French judgment lawfully issued to resolve a dispute.

Lastly, MTI suggests that the Versailles Judgment should not be recognized because of Sagan's misconduct and even fraud. MTI Br. in Opp'n at 27–29. MTI contends that Sagan "made questionable representations during the French proceedings that could not be challenged there," and that its representations "may have been fraudulent." *Id.* at 27. MTI also questions Sagan's refusal to accept its settlement offers.

"The defense of fraud in securing a foreign judgment as a basis for denying recognition to that judgment traditionally was limited in the United States to 'extrinsic fraud,' *e.g.*, fraudulent action by the prevailing party that deprived the losing party of adequate opportunity to present its case to the court." RESTATEMENT (THIRD), *supra*, § 482, cmt. e. Allegations of intrinsic fraud, on the other hand, such as that the judgment was based on perjured testimony or falsified documents, will not normally defeat recognition since they can be challenged in the proceeding that results in the judgment. *Id.* MTI's vague allegations suggest at most intrinsic fraud and, thus, are not sufficient to avoid recognition.

Further, regardless of the nature of the allegations, fraud has not been pled by MTI. In a companion case to *Hilton,* the Supreme Court explained: "To warrant the impeaching of a foreign judgment because [it was] procured by fraud, fraud must be distinctly alleged and charged." *Ritchie*

12

*v. McMullen*, 159 U.S. 235, 242 (1895). MTI did not plead fraud as a defense in this proceeding in either its original answer or its answer to the amended complaint. ECF No. 6, 12. Because MTI failed to assert fraud as an affirmative defense, it is barred from doing so now. *See* Fed. R. Civ. P. 8(c). Moreover, even if it had pled fraud, its allegations must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). MTI's answer to the amended complaint fails to meet these standards. ECF No. 12.

## CONCLUSION

In sum, there are no grounds under § 482(b) of the Restatement for withholding recognition of the Versailles Judgment. Although the total amount due under the judgment is subject to further computation, Sagan's motion for summary judgment (ECF No. 21) is **GRANTED**. MTI's motion for leave to file a sur-reply (ECF No. 40) is **GRANTED,** and the Clerk is directed to docket the proposed sur-reply attached to the motion. The Clerk is further directed to place this matter on the calendar for a telephone conference to discuss further proceedings needed for final resolution of the case.

**SO ORDERED**

Dated this   30th   day of May, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
